**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| VERONICA PAIGE, <br><br> *Plaintiff,* <br><br> v. <br><br> ATRION COMMUNICATION RESOURCES, INC., et al. <br><br> *Defendants.* | Civil Action No.: <br> 3:17-cv-00472-PGS-TJB <br><br><br> **MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 20) based on this Court's diversity jurisdiction. This case arises from workplace sexual harassment claims that a woman has alleged against her former employer. Because there are genuine disputes of material fact regarding the severity and pervasiveness of her employer's conduct, as well as whether the plaintiff, herself, engaged in sexually inappropriate conduct, Defendants' summary judgment motion is denied.

I

Defendant Atrion Communication Resources, Inc. ("Atrion") is an IT consulting company. (Am. Compl. ¶ 1, ECF No. 11). Plaintiff, Veronica Paige ("Paige"), began working for Atrion in February 2007 and resigned from her position in December 2016. (*Id.* at ¶ 4; Defs.' Statement of Material Facts ("SOMF") ¶ 33, ECF No. 20-1). Paige primarily worked as a receptionist, but also performed marketing and various administrative tasks at Atrion.

While Paige was employed with Atrion, Defendant Pasquale "Pat" Grillo ("Grillo") was the CEO, President, and Founder of Atrion, and served as Paige's general supervisor. (Am. Compl.

1

¶ 5; Defs.' SOMF ¶ 2). Throughout her employment at Atrion, Paige alleges that Grillo subjected

her to "explicit and overwhelming" sexual harassment. (Am. Compl. ¶ 5).

Below is a list of the specific incidents of sexual harassment Paige alleges that Grillo

engaged in during her employment, which were addressed directly at Paige or in her presence.

- In 2007, a few months after Paige began employment, Paige was called into Grillo's office because he wanted to show her something on his computer. (Am. Compl. ¶ 6). When Paige looked at the computer screen, she saw a pornographic video of a woman performing oral sex on a man. (*Id.* at ¶ 7). Paige expressed that she did not want to see the video and walked out of Grillo's office. (*Id.* at ¶ 8).

- When Paige began working at Atrion, she drove a Hummer SUV. (*Id.* at ¶ 8). Grillo made daily sexual remarks about Paige's vehicle, such as, "I could go for a Hummer, do you want to give me one?" (*Id.* at ¶ 10). A "hummer" is a colloquial term for fellatio. (*Id.* at ¶ 11).

- During the summer months, when Paige wore skirts to work, Grillo would make unwelcome sexually suggestive comments to her, such as that he wished he was sitting under Paige's desk. (*Id.* at ¶ 12).

- While Paige and Grillo were at lunch one day, Grillo informed Paige that the only reason he hired her was because she had large breasts and that other women applicants who had applied for Paige's position did not. (*Id.* at ¶ 13).

- In or about September 2014, while Grillo's wife was out of town, Paige was talking with Jennifer Farlow ("Ms. Farlow"), Atrion's Human Resources Manager, when Grillo approached them and said, "Well, since Roz [Grillo's wife] is away, I think we should have a threesome. Let's close the door; I would love to see you two go at it." (*Id.* at ¶ 14).

- In or about March 2015, Grillo's accountant's wife came in the office and commented on Grillo's weight, to which he replied, "I lost some [weight] but I'm trying to get [Plaintiff] to have sex with me for more exercise." (*Id.* at ¶ 17).

- In or about February 2015, Grillo's granddaughters visited Atrion's office, and after he asked his granddaughters for a kiss and hug, he turned to Plaintiff and said, "Oh, is that ok or will I get sued for that?" (*Id.* at ¶ 19).

- In or about June 2015, on Plaintiff's birthday, Grillo stated, "Oh, happy birthday. I'll take one for the team and have birthday sex with you." (*Id.* at ¶ 20).

- In or about July 2015, Plaintiff had bananas sitting on her desk and offered one to Grillo; Grillo responded, "No, but I have a banana for you and it's cream filled," suggesting a sexual innuendo regarding ejaculation. (*Id.* at ¶ 21).

- On or about November 23, 2015, Grillo walked through one of the office doors, held a banana up, and said, "Ohh, I want to shoot you with my banana," which Plaintiff claims also suggested a sexual innuendo regarding ejaculation. (*Id.* at ¶ 24).

- On or about December 14, 2015, there was a company manager's meeting. (*Id.* at ¶ 25). Grillo and an Atrion co-worker were standing at Paige's desk when Grillo stated, "I don't enjoy coming to work anymore. You can't even joke around without getting sued. It's not fun coming here anymore." (*Id.* at ¶ 26). Plaintiff responded and said, "Join the crowd. I'm always cranky." (*Id.* at ¶ 27). Grillo then responded, "Well, I can uncrank you!" which was an innuendo suggesting that he would have sex with her. (*Id.* at ¶ 28).

- On or about December 17, 2015, Paige was speaking with a co-worker when Grillo stated, "Well, I think we should go have some drinks and then have some sex, what do you think?" (*Id.* at ¶ 29).

- On or about March 20, 2016, Paige went into Grillo's office to use his computer and while Paige was typing, Grillo expressed that he was tired. (*Id.* at ¶ 30). Paige replied that she read about companies that put cots under employees' desks for employees to take naps. (*Id.*). Grillo stated, in response, "I wish there was a girl under my desk right now, and I don't even care if she spits. I'll just have the carpets cleaned." (*Id.*). Grillo was allegedly referring to a woman spitting out semen while performing fellatio. (*Id.*).

- On one occasion (it is unclear precisely when), Grillo rubbed Paige's shoulders in an inappropriate fashion. (Pl.'s Statement of Material Facts ("SOMF") ¶ 23, ECF No. 11). Grillo's wife, Rosalind Grillo ("Roz Grillo"), apparently saw this and hit Grillo in the head in a non-violent, playful manner to reprimand him. (*Id.*).

In sum, Paige claims that Pat Grillo's frequent sexual harassment created an intimidating, hostile, and offensive work environment. (Am. Compl. ¶ 32).

Paige alleges that on one occasion, she reported to her direct supervisor Grillo's sexually inappropriate remarks and conduct, but that her supervisor took no action and instead proceeded to tell her about Grillo's alleged history of sexually harassing women in the workplace. (Pl.'s SOMF ¶ 19). On another occasion, Paige claims that she reported the "cream-filled banana" comment to another supervisor, but her supervisor informed her that there was nothing that could

be done because Grillo was the owner of the company, but that if it were the supervisor's decision, he would have fired Grillo by now. (*Id.* at ¶ 34). Therefore, based on her supervisors' comments, Paige claims that she had no reasonable expectation that a complaint to Human Resources would result in any action to stop Grillo's sexual harassment. (Am. Compl. ¶ 6).

Grillo has denied that he made the vast majority of the sexually-laced comments Paige has alleged and that engaged in such conduct, and explains that in the few instances in which he did make such comments, they were made in jest and were not intended to denote anything sexual. (*See generally* Certification of Sebastian Ionno ("Ionno Cert."), Pl.'s Ex. 6, Deposition of Pat Grillo ("Pat Grillo Dep."), November 16, 2017, ECF No. 24-9).

In turn, Grillo contends that that Paige, herself, has uttered sexually explicit comments in the workplace. (Defs.' Br. in Support of Mot. for Summary Judgment, 4-6, ECF No. 20-2). For example, Grillo asserts that Paige would occasionally talk to Grillo about the size of one of her ex-husband's penises, and that she preferred men with large penises. (*Id.* at 5). Grillo also states that Paige wore revealing clothing to work. (*Id.*). Furthermore, Grillo notes that Paige published profanity on a Facebook post concerning a matter in Paige's personal life. (*Id.* at 4-5). Grillo further states that Paige engaged in racist conduct because she once circulated to a few Atrion employees a picture of monkeys gathered on top of vehicles in an urban city, which, Grillo argues, was racially offensive because it depicted African American individuals protesting during the 2015 Baltimore protests.

At all relevant times, Atrion had a sexual harassment policy in place. (Certification of Charles Schalk, Atrion Employee Handbook, § 9 Harassment, ECF No. 20-3). The relevant portions of the sexual harassment policy state the following:

> Atrion Communications has a strict policy against sexual harassment of any kind.
> Sexual harassment interferes with work performance; [and] creates an intimidating,

4

hostile or offensive work environment . . . Sexual harassment, as defined in this policy, includes, but is not limited to, unwanted sexual advances, requests for sexual favors, verbal or physical conduct of a sexual nature, visual forms of a sexual or offensive nature . . . or any other sexually oriented conduct that may be intimidating or unwelcome by the recipient.

(*Id.*).

Paige eventually resigned from her position at Atrion in December 2016, but alleges that because of Grillo's sexual harassment, and the knowledge that Atrion would not take any action to address Grillo's behavior, she was constructively discharged from Atrion. (Am. Compl. ¶¶ 39, 40). Grillo, on other hand, argues that Plaintiff quit her job to attend school. (Defs.' Br. 16-17). Overall, Paige alleges that Grillo's sexual harassment has negatively affected her emotionally, has demeaned and humiliated her, and has caused her stress. (Pl.'s SOMF ¶ 38).

## II

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ullrich v. United States Secy. of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995); *see also Ullrich*, 457 F. App'x. at 136 ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record."). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to set forth specific facts showing that there is a genuine issue for trial).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor - that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

III

Plaintiff's sexual harassment claims are state law claims, and therefore the New Jersey Law Against Discrimination (LAD) governs their adjudication. *See* N.J. Stat. Ann. § 10:5-12.

The purpose of the LAD is "nothing less than the eradication 'of the cancer of discrimination.'" *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 600 (1993) (internal citations omitted); *see also McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 827 (3d Cir. 1994) (noting that the "LAD was intended by the New Jersey legislature to eradicate "the cancer of discrimination.'"). The

6

LAD prohibits unlawful discrimination in employment and specifically prohibits discrimination based on sex. *See* N.J. Stat. Ann. § 10:5-4; § 10:5-12(a); *Lehmann*, 132 N.J. at 600. Although the LAD is silent on the subject of sexual harassment, the New Jersey Supreme Court has held that sexual harassment is a form of sex discrimination that violates the LAD. *See Aguas v. State*, 220 N.J. 494, 509 (2015); *Lehmann*, 132 N.J. at 601.

Generally, sexual harassment consists of unwelcomed sexual advances, requests for sexual favors, and/or verbal or physical conduct of a sexual nature that results in the alteration of the terms and conditions of one's employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Lehmann*, 132 N.J. at 600-604; *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 555-56 (1990). New Jersey courts recognize two types of sexual harassment: (1) "hostile work environment" sexual harassment and (2) "quid pro quo" sexual harassment. *Lehmann*, 132 N.J. at 601-602.

In this case, Plaintiff alleges that Pat Grillo's sexual harassment created a "hostile work environment" at Atrion, and therefore this Court will only analyze this claim.

IV

"Hostile work environment" sexual harassment involves harassing conduct that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *See Clayton v. City of Atl. City*, 538 F. App'x 124, 128 (3d Cir. 2013); *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 450 (D.N.J. 2009); *Lehman*, 132 N.J. at 603. In *Lehmann*, the leading New Jersey sexual harassment case, the New Jersey Supreme Court noted that in hostile work environment cases, the harassing conduct typically takes the form of unwelcome touching and comments; "[h]owever, the harassing conduct

need not be sexual in nature . . . its defining characteristic is that the harassment occurs because of the victim's sex." *Lehmann*, 132 N.J. at 602.

To state a claim for hostile work environment sexual harassment, a female plaintiff must prove four elements: that the complained-of conduct (1) would not have occurred *but for* her gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment were altered and that the *working environment is hostile or abusive. Lehmann*, 132 N.J. at 603-04; *see Clayton*, 538 F. App'x at 128; *Ivan*, 595 F. Supp. 2d at 450.

"[W]hile separable to some extent," the second, third, and fourth prongs of the analysis "are interdependent," because the severe or pervasive prong is determined by whether a reasonable person in the protected class, in this case a reasonable woman, would believe that "the conditions of employment are altered and [the] working environment is hostile" or abusive. *Clayton*, 538 F. App'x at 128 (quoting *Lehmann*, 132 N.J. at 604).

Importantly, a plaintiff is not required to prove that her employer intentionally discriminated or harassed her, or intended to create a hostile work environment. *Lehmann*, N.J. at 604. Rather, the LAD focuses squarely on the effect of discrimination, whether intentional or unintentional. *Id.* at 605.

### V

In this case, Paige has demonstrated that Pat Grillo's allegedly sexually harassing conducted occurred because she was a woman.

When the harassing conduct is sexual or sexist in nature, and *is based on the plaintiff's sex*, the "but-for" element will automatically be satisfied. *Lehmann*, 132 N.J. at 605. The first element of a hostile work environment sexual harassment claims is the "but-for" element and "simply

requires that in order to state a claim under the LAD, a plaintiff show by a preponderance of the evidence that she suffered discrimination because of her sex." *Id.* at 604. The *Lehmann* Court explained that sexual harassment does not violate the LAD if it was conducted in a gender-neutral fashion toward all employees. *Id.* "For example, if a supervisor is equally crude and vulgar to all employees, regardless of their sex, no basis exists for a sex harassment claim. Although the supervisor may not be a nice person, he is not abusing a plaintiff because of her sex." *Id.*

Here, Defendants do not allege, and thus Plaintiff does not refute, that Grillo made sexually explicit comments or behaved in a sexually explicit manner toward all Atrion employees. Therefore, Plaintiff has satisfied the first element of the analysis and has thus demonstrated that Grillo's alleged sexually harassing comments and conduct were directed at her and thus occurred because of her sex.

## VI

Summary judgment must be denied in this case because there are genuine disputes of fact regarding whether Grillo made sexually suggestive comments or engaged in such conduct at and toward Paige, which hinges directly on the question of whether Grillo's alleged words and actions were "severe or pervasive" enough to constitute sexual harassment. Grillo has also alleged that Paige engaged in sexually inappropriate conduct, which further warrants denial of summary judgment.

The second element of a hostile work environment sexual harassment claim is that the sexually harassing conduct be "severe or pervasive." *See Lehmann*, 132 N.J. at 603. The *Lehmann* Court emphasized that the *harassing conduct* must be severe or pervasive, not its effect on the plaintiff or on the work environment. *Id.* at 606. Whether harassing conduct is "severe or pervasive" requires an assessment of the totality of the relevant circumstances, which involves an

examination of (1) "the frequency of all the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." *Clayton*, 538 F. App'x at 128; *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178, 196 (2008) (internal citations and quotation marks omitted).

The *Lehmann* Court also emphasized that the "severe *or* pervasive" requirement is disjunctive and conforms with federal law. *Lehmann*, 132 N.J. at 606; *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe *or* pervasive . . .") (emphasis added). In other words, "[a]lthough it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile, such a case is certainly possible." *Lehmann*, 132 N.J. at 606-07. Thus, a dual severe *and* pervasive requirement would effectively "bar actions based on a single, extremely severe incident or, perhaps, even those based on multiple but randomly-occurring incidents of harassment." *Id.* at 606.

Still, the New Jersey Model Jury Charge regarding hostile work environment sexual harassment claims states that "the law does not require that the workplace be free of all vulgarity or sexually-laced speech or conduct. Occasional, isolated and/or trivial remarks or conduct are generally insufficient to constitute unlawful harassment." New Jersey Model Civil Jury Charge 2.25 (revised Mar. 2016). Rather, only speech or conduct that is sufficiently severe or pervasive to create a hostile or intimidating working environment constitutes unlawful sexual harassment. *Id.*; *see also Herman v. Coastal Corp.*, 348 N.J. Super. 1, 23 (N.J. Super. Ct. App. Div. 2002) ("Although a person is legally entitled to a work environment free of hostility, she is not entitled to a perfect workplace, free of annoyances and colleagues she finds disagreeable. In short, what is

illegal is a 'hostile work environment,' not an 'annoying work environment.'") (internal citation omitted).

Trial courts are also advised to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Clayton*, 538 F. App'x at 124 (quoting *Faragher*, 524 U.S. at 788).

Nevertheless, as stated, courts must not consider each incident in isolation, but rather the "*cumulative* effect" of the alleged sexually harassing incidents. *Lehmann*, 132 N.J. at 607 (emphasis added). "In most cases, it is the cumulative impact of successive incidents from which springs a fully formed hostile work environment." *Godfrey*, 196 N.J. at 197; *see Lehmann*, 132 N.J. at 607.

Here, at this stage of the case, whether this Court should grant or deny summary judgment turns on whether Grillo's alleged conduct was severe or pervasive (or both). Accordingly, because there are genuine disputes of fact about whether Grillo made sexually inappropriate comments and engaged in such conduct toward Paige, as well as whether Paige, herself, made sexually inappropriate comments, summary judgment must be denied.

Defendants argue that even if Paige's allegations are true concerning Grillo's comments and conduct, his comments and conduct constitute only "a few sporadic incidents over the course of several years," and therefore no reasonable jury could conclude that his behavior was severe or pervasive. (Defs.' Br. 13). "At best," Defendants assert, "the plaintiff can point to a stray comment or joke made on the frequency of once a year or once every two years, a mere handful over the course of ten years [the approximate duration of Plaintiff's employment at Atrion]." (*Id.* at 14). Defendants further assert that Grillo's "isolated" behavior was merely "jovial." (*Id.* at 13). Defendants thus maintain that Paige is not entitled to a workplace free of all vulgarity or sexually-

laced speech or conduct, and, consequently, Grillo's words and actions do not rise to the level of "severe or pervasive" under the LAD.

Paige, on the other hand, avers that Grillo's conduct and comments were, in fact, "severe or pervasive," if not both, because she testified in detail to "numerous acts of absolutely flagrant and grotesque sexual harassment over the course of her employment." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summary Judgment, 9, ECF No. 24). In addition, Paige asserts that a few Atrion employees testified to Grillo's sexually harassing behavior and have thus corroborated, at least in part, her sexual harassment claims. (*Id.* at 12).

For instance, Paige points to the fact that Ms. Farlow, the Human Resources Manager, testified that she has heard Grillo make sexual jokes "on and off" throughout the years, and that it was a running joke among some Atrion employees that Grillo was a "walking HR violation." (Ionno Cert., Pl.'s Ex. 3, Deposition of Jennifer Farlow, Nov. 14, 2017, at 60:9 – 61:14, ECF No. 24-6). Similarly, Paige points to the testimony of Roz Grillo, Grillo's wife, in which Roz suggested that she (Roz) has heard Grillo make sexual jokes in the workplace. (Ionno Cert., Pl.'s Ex. 4, Deposition of Rosalind Grillo, Oct. 24, 2018, at 26:6-9, ECF No. 24-7).

Grillo, meanwhile, denies that he made most of the sexually explicit comments or refutes the substance and intentions of his comments. (*See generally* Pat Grillo Dep.). For instance, he has denied that he showed Paige on his computer a woman performing oral sex on a man; that he had a "cream-filled banana" for Paige; that he told her he could "go for a Hummer"; that he wished he could sit under her desk while she wore a skirt; that he hired her because of her "large breasts"; and that he, Paige, and Ms. Farlow should have a threesome. (*See* Pat Grillo Dep. 79:24 – 86:2).

Grillo also testified, however, that the comments which he admits he uttered were either made in jest or were not intended to be sexual in nature. For example, he stated that he "possibly"

referred to Paige as "the Hummer girl" because she drove a Hummer, but never said in a sexual

manner that he could "go for a Hummer." (Pat Grillo Dep. 80:19-22). Regarding the banana

comment generally, Grillo indicated that most of the Atrion employees (presumably including

Grillo and Paige) commonly made the following joke: "Is that a banana in your pocket or are you

glad to see me?" (Pat Grillo Dep. 21:17 – 22:13). Grillo also stated that he was only joking when

he made the "threesome" comment. (Pat Grillo Dep. 82:9-17 ("You know, we kidded around a

lot. And I may have said something along the lines, hey, Ros [Grillo's wife] is away, let's go out,

something like that. Again, they both laughed . . . I never made a sexual advancement at Ronnie

[Plaintiff], and I had no intention to.")).

In sum, the deposition testimonies thus demonstrate that genuine factual issues exist as to

whether, in the first place, Grillo uttered the alleged sexually inappropriate comments or engaged

in inappropriate conduct, as well as what he meant by some of the comments that he admits he

made; and second, whether his behavior is "severe or pervasive" enough to satisfy the second

element of Plaintiff's hostile work environment sexual harassment claim. Here, Paige is alleging

that Grillo made comments on *numerous* occasions throughout her employment at Atrion. The

alleged frequency of these comments is coupled with the fact that a reasonably jury could view

some of these alleged comments as lewd and inappropriate for the workplace.

Moreover, at oral argument, Defendants' counsel relied heavily on *Clayton v. City of Atl.

City*, a 2013 Third Circuit opinion in which the court affirmed summary judgment in favor of the

defendants after finding that no reasonable jury could have concluded that the alleged sexually

harassing conduct in that case was severe or pervasive. 538 F. App'x at 128-29. Counsel

emphasized that the sexually harassing behavior in *Clayton* was more egregious than the alleged

behavior of which Grillo has been accused, but the court in that case nonetheless granted summary

judgment in favor of the defendants. The facts of *Clayton*, however, are clearly distinguishable from the case at bar.

In *Clayton*, the plaintiff, a female police officer who worked for the Atlantic City Police Department, claimed that she was subjected to a hostile work environment because of sexually harassing behavior by her superior officers. *Id.* at 125. For instance, the plaintiff claimed that one of her superior officers asked her out on dates, commented on her physical features, and read her a love poem over the phone. *Id.* at 126. In addition, while the plaintiff and the same superior officer were on vacation, the officer massaged her foot on his leg near his genitals in a Jacuzzi. *Id.* Interestingly, though, the court noted that the plaintiff had testified that she and this particular superior officer "were friends" and would often dine and vacation together with each other's respective families. *Id.* at 126 n.2.

On another occasion, a different superior officer grabbed the plaintiff's buttocks and made a lewd comment to her. *Id.* at 126. A third officer made inappropriate comments over the police radio to other police officers, such as "which one of those guys is hitting her [the plaintiff] in the ass tonight?" *Id.* at 127. Years later, the plaintiff called into a radio show and denied that she had problems with the Police Department and, at the time the case was decided, remained an employee with the Department. *Id.* at 125, 127.

In its holding, the Third Circuit stated that even if the plaintiff's allegations were true, "there were only a few sporadic incidents over the course of several years" such that no reasonable jury could find that she was sexually harassed. *Id.* at 129. The court explained that "although rude and distasteful, the alleged lewd remarks on the radio and the incident where [one of the officers] grabbed [the plaintiff's] buttocks in public" and made a lewd comment "fell short" of being

deemed "severe or pervasive" to constitute hostile work environment sexual harassment. *Id.* at 129.

As stated, the facts of the case before this Court are far different from those in *Clayton.* To start, unlike the plaintiff in *Clayton*, who was "friends" with one of the superior officers she claimed sexually harassed her, Paige has not claimed that she and Grillo were ever friends, let alone close friends that regularly dined and vacationed together. (*See generally* Paige Dep.). In fact, Paige rejected an offer from Atrion to attend a four-day employee retreat in which Grillo was present. (*Id.* at 165:16-19). In addition, Paige resigned from her job at Atrion, whereas the *Clayton* plaintiff remained employed with the Police Department.

Regarding the frequency and gravity of the alleged sexually harassing conduct, in *Clayton*, there appeared to have been approximately six instances in which the plaintiff was harassed. Yet, in its holding, the Third Circuit only mentioned two incidents—the lewd remarks on the radio and the grabbing of the plaintiff's buttocks accompanied by a lewd remark—that seemed relevant to the court's finding that the harassing conduct was neither severe nor pervasive. *Clayton*, 538 F. App'x at 129. Yet, here, to the best of this Court's knowledge, Paige has alleged at least *fourteen* separate incidents in which Grillo sexually harassed her, which is far more than the sexual harassment to which the *Clayton* plaintiff was subjected. (*See generally* Compl.; Pl.'s SOMF).

Most importantly, though, is that whether Grillo engaged in sexually harassing behavior toward Paige, along with the relative degree of severity of his behavior, remains, at the summary judgment stage, a genuine factual dispute. This Court is therefore precluded from weighing the evidence to try to discern how severe or pervasive Grillo's behavior was, if true. *See Marino*, 358 F.3d at 247. Thus, at this stage of the case, a reasonable jury could find that Grillo's behavior was severe or pervasive, if not both.

Defendants further argue that Grillo's alleged behavior is not severe or pervasive because Paige is guilty of the same conduct of which she complains. (Defs.' Br. 13). Defendants assert that Paige, herself, uttered sexually inappropriate comments in the workplace. (*Id.* at 13). Specifically, Defendants refer to Grillo's deposition testimony indicating that Paige would occasionally talk to Grillo about the size of one of her ex-husband's penises, and that she preferred men with large penises. (*See* Pat Grillo Dep. 16:9 – 17:9). Defendants also note that Paige published profanity on a Facebook post concerning a matter in Paige's personal life, thus implying that Paige is as foul-mouthed as Grillo. (Defs.' Br. 14). Further, Defendants maintain that Paige engaged in inappropriate conduct because she once circulated to a few Atrion employees a picture of monkeys gathered on top of vehicles in an urban city, which Defendants suggest was racially offensive because it depicted African Americans protesting during the 2015 Baltimore protests. (*Id.*).

Plaintiff, in response, denies that she made the statement regarding her ex-husband's penis and states that whether Plaintiff uses profanity in her personal life or has made racist comments in the past is irrelevant as to whether Grillo sexually harassed her at Atrion. (Pl.'s Opp'n Br. 20-21).

Like Grillo's alleged conduct and statements, whether Plaintiff made similar sexually inappropriate statements or engaged in racist behavior are questions of fact. Consequently, because there are genuine disputes of fact concerning whether Grillo's alleged behavior was severe or pervasive enough to satisfy the second element of a hostile work environment sexual harassment claim, as well as whether Paige, herself, engaged in sexually explicit and racist behavior, summary judgment must be denied. Since this Court has denied summary judgment based on the "severe or pervasive" element, it is unnecessary for the Court to discuss the third or fourth elements of a hostile work environment sexual harassment claim.

# VII

At this juncture, because the Court has denied summary judgment as to Plaintiff's hostile work environment sexual harassment claim, this Court cannot decide whether Plaintiff was constructively discharged from Atrion.

Under the LAD, a "constructive discharge" occurs when an "'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 27-28 (2002) (quoting *Muench v. Township of Haddon*, 255 N.J. Super. 288, 302, 605 A.2d 242 (N.J. Super. Ct. App. Div. 1992) (internal citation omitted). The employee alleging constructive discharge must demonstrate that she did everything that was necessary to remain employed rather than simply quit. *Shepherd*, 174 N.J. at 28. A trial court should consider the nature of the alleged sexual harassment, the closeness of the working relationship between the harasser and the victim, whether the employee resorted to internal grievance procedures, the responsiveness of the employer to the employee's complaints, and other relevant circumstances. *Shepherd*, 174 N.J. at 28 (internal citations omitted).

A constructive discharge claim requires more egregious conduct than that sufficient for a hostile work environment claim, and thus envisions a "sense of outrageous, coercive and unconscionable requirements." *Shepherd*, 174 N.J. at 28 (quoting *Jones v. Aluminum Shapes, Inc.*, 339 N.J. Super. 412, 428, 772 A.2d 34 (N.J. Super. Ct. App. Div. 2001)).

As stated, this Court has not ruled on whether Paige has fully demonstrated that she was sexually harassed, which effectively precludes an analysis of whether she was constructively discharged from Atrion because of such alleged harassment.

## VIII

Accordingly, for the reasons stated, Defendants' motion for summary judgment is denied.

### ORDER

This matter having come before the Court on Defendants' Motion for Summary Judgment (ECF No. 20), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this _____5_____ day of November, 2019,

**ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 20) is **DENIED.**

_____
PETER G. SHERIDAN, U.S.D.J.